*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*Telephone: (602) 274-1100*
*Ty D. Frankel (AZ Bar No. 027179)*
*tfrankel@bffb.com*

*Law Offices of*
**BONNETT, FAIRBOURN,**
**FRIEDMAN & BALINT, P.C.**
*600 W. Broadway, Suite 900*
*San Diego, California 92101*
*Telephone: (619) 756-7748*
*Patricia N. Syverson (AZ Bar No. 020191)*
*psyverson@bffb.com*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Angel A. Garcia, a single man, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | **[JURY TRIAL DEMANDED]** |
| AVH Mortgage, LLC, an Arizona limited liability company; LoanDepot.com, LLC, a Delaware limited liability company, | |
| Defendants. | |

Plaintiff Angel A. Garcia ("Plaintiff") for his Complaint against AVH Mortgage, LLC and LoanDepot.com, LLC (collectively referred to as both "Defendants" and "Loan Depot") alleges as follows:

### I.  NATURE OF THE CASE

1.     Plaintiff brings this action against Loan Depot for its failure to pay him overtime and all wages due in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and the Arizona Wage Statute, A.R.S. § 23-350 et seq.

2.     Plaintiff also brings this action for Loan Depot's unlawful retaliation under the FLSA and its wrongful termination of his employment under Arizona law.

3.     This action is brought to recover lost wages and liquidated damages equal to the lost wages, front pay, compensatory damages, reasonable attorneys' fees and costs, pre-judgment interest, and punitive damages resulting from Defendants' violations of the FLSA and Arizona law.

## II.   JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 201 et seq. and 28 U.S.C. § 1331.

5.     Plaintiff's State law claims are sufficiently related to the FLSA claims that they form part of the same case or controversy.  This Court therefore has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

6.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of Arizona within this District.  Plaintiff was employed by Defendants in this District.

## III.   PARTIES

7.     At all times relevant to the matters alleged herein, Plaintiff Angel A. Garcia resided in the State of Arizona in Maricopa County.

8.     Plaintiff was a non-exempt employee of Loan Depot from on or around March 5, 2018 until on or around June 27, 2018.

9.     Plaintiff was employed as a Builder Loan Consultant.  His duties comprised that of a loan officer.

10.    During Plaintiff's tenure as an employee at Loan Depot, Plaintiff was compensated an hourly rate of $12.00 per hour plus a guarantee, commission, and bonus.

11.    Plaintiff was a non-exempt employee under the FLSA.

12.    Defendant AVH Mortgage, LLC is an Arizona limited liability company authorized to do business in Arizona and operates a mortgage loan business headquartered in Arizona.  Defendant AVH Mortgage, LLC at all relevant times has been engaged in

interstate commerce and has been an enterprise whose gross annual volume of sales made, or business done is greater than $500,000.  Defendant AVH Mortgage, LLC, by and through its agents and employees, set Plaintiff's compensation and controlled his employment and the employment policies applicable to him, including compensation practices and the decision to terminate Plaintiff's employment.

13.    Defendant LoanDepot.com, LLC is a Delaware limited liability company authorized to do business in Arizona and operates a mortgage loan business in Arizona. Defendant LoanDepot.com, LLC at all relevant times has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made, or business done is greater than $500,000.  Defendant LoanDepot.com, LLC, by and through its agents and employees, set Plaintiff's compensation and controlled his employment and the employment policies applicable to him, including compensation practices and the decision to terminate Plaintiff's employment.

14.    At all relevant times, Loan Depot was an employer as defined by 29 U.S.C. § 203(d) and A.R.S. § 23-350(3) and a "person" under 29 U.S.C. § 213(a)(1).

## IV.   FACTUAL BACKGROUND

15.    Loan Depot is a consumer lender that has more than 1,800 licensed loan officers nationwide, including many in Arizona.

16.    From on or around March 5, 2018 until on or around June 27, 2018, Plaintiff was an employee of Loan Depot working as a loan officer with the title "Builder Loan Consultant."

17.    Plaintiff was compensated at a rate of $12.00 per hour.  He also received a commission based on the dollar volume or unit count of all closed loans each month and a quarterly commission bonus.

18.    Loan Depot also recognized Plaintiff's success as an employee by providing him a monthly guarantee of $6,000, which upon information and belief, was more than his peers received.

19.     Plaintiff, like all loan officers, was required to obtain licensure as a loan officer to perform duties associated with lending in the state in which the customer he was working with was located.

20.     Plaintiff was licensed as a loan officer in Arizona during his tenure with Loan Depot.

21.     As a loan officer in Arizona, Plaintiff was prohibited from making a false promise or misrepresentation or conceal an essential or material fact in the course of the mortgage broker business and also prohibited from engaging in illegal or improper business practices.  A.R.S. § 6-909(L) & (N).

22.     Plaintiff's supervisor, Ken Stropka, nevertheless required Plaintiff to misrepresent his work as a loan officer licensed in Arizona and engage in illegal and improper business practices by performing work on loans in states where Plaintiff was not licensed.

23.     For example, Mr. Stropka instructed Plaintiff to perform work as a loan officer on loans in Florida even though Plaintiff was not licensed there.

24.     Plaintiff was very concerned about management's repeated requests that he conduct work for originating loans in states where he was not licensed as a loan officer because such behavior was a violation of statute and public policy in Arizona.

25.     Plaintiff refused to participate in illegal behavior in violation of Arizona statute and public policy.

26.     Plaintiff exposed the wrongdoing by Loan Depot by notifying the human resources department that he was being required to perform tasks in violation of Arizona statute and policy for loan officers.

27.     Despite being made aware of Plaintiff's concerns, management continued to require Plaintiff to perform work as a loan officer in states where he was not licensed.

28.     For example, on June 4, 2018, Plaintiff received email correspondence from his manager instructing him to work on loans for customers who were seeking lending in states other than Arizona where Plaintiff was licensed at the time.

29.     On June 5, 2018, Plaintiff stated his concerns to his manager, Mr. Stropka, regarding Plaintiff's being instructed to engage in loan officer work in states where he was not licensed against Arizona statute and policy.   Nevertheless, Mr. Stropka instructed Plaintiff to pursue the work on the out of state loans despite his concerns about the legality of doing so.

30.     On June 6, 2018, Plaintiff contacted the human resources department by email to notify Loan Depot that he was being instructed to perform loan transactions in violation of Arizona statute and policy.

31.     Plaintiff was concerned about putting his loan officer license in jeopardy by performing the duties associated with originating loans in states where he was not licensed as required by Loan Depot by and through its management.

32.     Additionally, Plaintiff was the only Spanish language speaker who worked as a loan officer for the company.

33.     As a result, the company had a practice of requiring him to be on-call significant hours each week, in addition to his regular work hours, to work with Spanish-language clients.

34.     Loan Depot management required this from Plaintiff so that he could handle the loans for Spanish-speaking customers who otherwise would not be able to conduct business with a Loan Depot loan officer without Plaintiff's participation.

35.     Plaintiff was required to complete loan applications within thirty minutes of receiving contact from a customer, including many Spanish language customers in states throughout the country.

36.     As a result of this strict requirement, Plaintiff was required to spend significant hours working on call.   During this time, he was not able to perform personal tasks and instead had to remain at his computer so that he could access the Loan Depot computer system as soon as a customer contacted him to complete a loan application.

37.    As a result of all his assignments, Plaintiff routinely worked with knowledge of management in excess of forty hours per week during his tenure at Loan Depot, but Plaintiff was not paid overtime for all of the hours he worked.

38.    During the typical week of his employment with Loan Depot, Plaintiff worked eighty-four hours.

39.    However, Plaintiff was not paid overtime for all the hours he was required by management to work with Loan Depot's knowledge.

40.    On June 23, 2018 and again on June 26, 2018, Plaintiff emailed Loan Depot's human resources department notifying them that he was not being paid for all the overtime he worked.  He specifically notified human resources that he was not being paid for all the hours he was required to work and be on call to service Spanish-language customers.

41.    Human resources responded that they would pay Plaintiff any back wages he was owed, but Plaintiff was not compensated for all of the hours he worked by Loan Depot.

42.    Loan Depot wrongfully withheld wages from Plaintiff by failing to pay wages due to Plaintiff for hours Plaintiff worked, including overtime.

43.    Following Plaintiff's complaints to human resources about having not received legally required overtime and wages due under the FLSA and Arizona law and being required to conduct loan officer work in violation of Arizona statute and public policy, and as a direct and proximate result of Plaintiff's complaints, Loan Depot retaliated by terminating Plaintiff's employment on June 27, 2018.

## V.  COUNT ONE

### (**Failure to Properly Pay Overtime Wages - FLSA - 29 U.S.C. § 207**)

44.    Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

45.    Plaintiff was a non-exempt employee entitled to statutorily mandated overtime pay.

46.    Loan Depot was his employer.

47.     Loan Depot failed to comply with 29 U.S.C. § 207 because Plaintiff worked for Loan Depot in excess of forty hours per week, but Loan Depot failed to pay Plaintiff for those excess hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

48.     Loan Depot's failure to pay overtime to Plaintiff was willful.  Loan Depot knew Plaintiff was working overtime but failed to properly investigate the FLSA requirements and pay overtime wages.  Loan Depot had no reason to believe its failure to pay overtime was not a violation of the FLSA.

49.     Plaintiff is entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees and costs.

## VI.   COUNT TWO

### (Unlawful Retaliation - FLSA - 29 U.S.C. § 215)

50.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

51.     Plaintiff was a non-exempt employee of Loan Depot entitled to the statutorily mandated overtime wage.

52.     Loan Depot willfully failed to comply with 29 U.S.C. § 207 by failing to pay Plaintiff the statutorily required overtime wage of one and one-half times Plaintiff's regular rate for hours worked by Plaintiff in excess of forty in a workweek as required by the FLSA.

53.     In or around June 2018, as set forth in this Complaint, Plaintiff engaged in protected activity by bringing to the attention of Loan Depot's management and human resources department that the company was violating the overtime provisions of the FLSA.

54.     Loan Depot, through its human resources department acting in their capacity as employees and agents of Loan Depot, responded that it would pay Plaintiff back wages.

55.     Loan Depot never followed through with its promise to pay Plaintiff back wages to which he was entitled, and instead terminated Plaintiff's employment on June 27, 2018 as a result of his complaints about unpaid overtime.

56.     As a direct and proximate result of Plaintiff's complaints about Loan Depot's unlawful overtime practices, Plaintiff was subsequently terminated, which constitutes a materially adverse employment action in violation of 29 U.S.C. § 215(a)(3).

57.     It is unlawful for Loan Depot to retaliate against Plaintiff because he has made any complaint, whether in writing or orally, that Loan Depot violated or was violating any provision of the FLSA.  29 U.S.C. § 215(a)(3).

58.     There is a causal connection between Plaintiff engaging in the aforementioned protected activity and his termination, in that but for the Plaintiff engaging in the protected activity, Loan Depot would not have terminated Plaintiff's employment.

59.     Plaintiff's protected activity was a motivating factor in the decision by Loan Depot to terminate him.

60.     Plaintiff has been damaged as a direct and proximate cause of action and conduct of Defendants.

61.     Defendants' conduct in taking adverse action against Plaintiff's employment was done with ill will, spite, malice, for the purpose of injuring Plaintiff and with a complete indifference of Plaintiff's rights.

62.     Defendants' conduct in taking adverse action toward Plaintiff's employment harmed Plaintiff and was malicious, oppressive or in reckless disregard of his rights.  Loan Depot therefore should be required to respond to Plaintiff in the form of a punitive or exemplary damage award under federal law.

### VII.   COUNT THREE

### (Failure to Pay Timely Payment of Wages under the Arizona Wage Statute)

63.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

64.     Loan Depot was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

65.     Loan Depot was aware that, under A.R.S. §§ 23-351-353, it was obligated to pay all wages due to Plaintiff.

66.     Loan Depot failed to timely pay Plaintiff wages he was due without a good faith basis for withholding the wages.

67.     Loan Depot has willfully failed to timely pay wages due to Plaintiff.  As a result of Loan Depot's unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

## VIII.   COUNT FOUR – WRONGFUL TERMINATION
### (Violation of the Arizona Employment Protection Act)

68.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

69.     Loan Depot's termination of Plaintiff violated the statutes and public policy set forth in or arising out of Arizona statutes, including but not limited to A.R.S. § 6-909(L) & (N), giving rise to a cause of wrongful termination under A.R.S. § 23-1501 of the Arizona Employment Act.

70.     Loan Depot's termination of Plaintiff was in retaliation for Plaintiff's disclosure to Defendants that they were requiring him to violate Arizona statutes, including but not limited to A.R.S. § 6-909(L) & (N).

71.     Plaintiff made his disclosures to his employer and to representatives of his employer who he reasonably believed were in supervisory and managerial position with the authority to investigate and take action to prevent further violations.

72.     As a direct and proximate result of unlawful termination of Plaintiff, Plaintiff suffered financial harm including but not limited to past and future wage and benefit losses, economic disadvantages, mental pain, anguish, and suffering caused by the acts of Loan Depot.

## IX.   COUNT FIVE – WRONGFUL TERMINATION
### (Common Law Claim of Wrongful Termination against Public Policy)

73.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

74.     Loan Depot's actions in terminating Plaintiff in the above fashion are injurious to the public at large and violated public policy related to loan officers.

75.     As a direct and proximate result of unlawful termination of Plaintiff, Plaintiff has suffered financial harm including but not limited to past and future wage and benefit losses, economic disadvantages, mental pain, anguish, and suffering caused by the acts of Loan Depot.

## X.   REQUESTED RELIEF

WHEREFORE, Plaintiff prays:

A.     For the Court to declare and find that Loan Depot committed one or more of the following acts:

    i.     violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages to Plaintiff;

    ii.    willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

    iii.   violated the record keeping requirements of the FLSA;

    iv.    willfully violated the Arizona Wage Statute by failing to timely pay all wages due to Plaintiff;

B.     For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b), to be determined at trial;

C.     For the Court to declare and find that the Defendants violated the non-retaliation provisions of the FLSA, 29 U.S.C. § 215(a)(3);

D.     For the Court to declare and find that Defendants violated the laws of this State by committing wrongful termination;

E.     For the Court to award compensatory and punitive damages, including lost wages and liquidated damages equal to the lost wages and front pay, to be determined at trial;

F.     For the Court to award interest on all wage compensation due accruing from the date such amounts were due;

G.     For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

H.     For the Court to award restitution;

I.     For the Court to award Plaintiff's reasonable attorneys' fees and costs;

J.     For the Court to award pre- and post-judgment interest;

K.     For the Court to award Plaintiff's resulting consequential damages, in an amount to be proven at trial; and,

L.     For such other relief as the Court deems just and proper.

## XI.   DEMAND FOR JURY TRIAL

63.     Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

DATED:  August 15, 2018.

> BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
>
>   /s/ Ty D. Frankel
> Ty D. Frankel
> 2325 E. Camelback Road, Suite 300
> Phoenix, Arizona 85016
> Telephone: 602-274-1100
> Facsimile: 602-798-5860
>
> BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
> Patricia N. Syverson
> 600 W. Broadway, Suite 900
> San Diego, California 92101
>
> Attorneys for Plaintiff