*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*Telephone: (602) 274-1100*
*Ty D. Frankel (AZ Bar No. 027179)*
*tfrankel@bffb.com*

*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*600 W. Broadway, Suite 900*
*San Diego, California 92101*
*Telephone: (619) 756-7748*
*Patricia N. Syverson (AZ Bar No. 020191)*
*psyverson@bffb.com*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Angel Garcia, | Case No. CV-18-02590-PHX-JZB |
| Plaintiff, | **JOINT CASE MANAGEMENT REPORT** |
| v. | |
| AVH Mortgage LLC, et al., | |
| Defendants. | |

Pursuant to the Court's October 3, 2018 Order setting a Rule 16 Scheduling Conference, counsel for Plaintiff Angel Garcia ("Plaintiff") and counsel for Defendants AVH Mortgage, LLC ("AVH") and loanDepot.com, LLC ("loanDepot") (collectively "Defendants") conferred on October 31, 2018, in a good faith effort to develop a Joint Case Management Report for this litigation. The parties have agreed as follows:

**1.     The Parties who attended the Rule 26(f) Meeting on October 31, 2018 and assisted in developing the Case Management Report.**

On behalf of Plaintiff: Ty D. Frankel. On behalf of Defendants: Tracy Miller.

**2.     A short statement of the nature of the case.**

**A.     Plaintiff's statement of the case.**

Loan Depot[1] operates a mortgage loan business in Arizona. Loan Depot is a consumer lender that has more than 1,800 licensed loan officers nationwide, including many in Arizona. From March 5, 2018 until June 27, 2018, Plaintiff was an employee of Loan Depot working as a loan officer with the title "Builder Loan Consultant." Plaintiff was compensated at a rate of $12.00 per hour. He also received a commission based on the dollar volume or unit count of all closed loans each month and a quarterly commission bonus. Loan Depot also recognized Plaintiff's success as an employee by providing him a monthly guarantee of $6,000, which was more than his peers received.

Plaintiff, like all loan officers, was required to obtain licensure as a loan officer to perform duties associated with lending in the state in which the customer he was working with was located. Plaintiff was licensed as a loan officer in Arizona during his tenure with Loan Depot. As a loan officer in Arizona, Plaintiff was prohibited from making a false promise or misrepresentation or conceal an essential or material fact in the course of the mortgage broker business and also prohibited from engaging in illegal or improper business practices. A.R.S. § 6-909(L) & (N). Plaintiff's supervisor, Ken Stropka, nevertheless required Plaintiff to misrepresent his work as a loan officer licensed in Arizona and engage in illegal and improper business practices by performing work on loans in states where Plaintiff was not licensed. For example, Mr. Stropka instructed Plaintiff to perform work as a loan officer on loans in Florida even though Plaintiff was not licensed there.

Plaintiff was very concerned about management's repeated instruction that he conduct work for originating loans in states where he was not licensed as a loan officer because such behavior was a violation of statute and public policy in Arizona. Plaintiff refused to participate in illegal behavior in violation of Arizona statute and public policy. Plaintiff exposed the wrongdoing by Loan Depot by notifying the human resources department that he was being required to perform tasks in violation of Arizona statute and

---

[1] For purposes of this section, "Loan Depot" refers to Defendants.

1 policy for loan officers.  Despite being made aware of Plaintiff's concerns, management
2 continued to instruct Plaintiff to perform work as a loan officer in states where he was not
3 licensed.

4        For example, on June 4, 2018, Plaintiff received email correspondence from his
5 manager instructing him to work on loans for customers who were seeking lending in states
6 other than Arizona where Plaintiff was licensed at the time. Plaintiff stated his concerns to
7 his manager, Mr. Stropka, regarding being instructed to engage in loan officer work in states
8 where he was not licensed against Arizona statute and policy.  Nevertheless, Mr. Stropka
9 instructed Plaintiff to pursue the work on the out-of-state loans despite his concerns about
10 the illegality of doing so.  On June 6, 2018, Plaintiff contacted the human resources
11 department by email to notify Loan Depot that he was being instructed to perform loan
12 transactions in violation of Arizona statute and policy.

13        Additionally, Plaintiff was the only Spanish language speaker who worked as a loan
14 officer for the company. As a result, the company had a practice of requiring him to be on-
15 call significant hours each week, in addition to his regular work hours, to work with
16 Spanish-language clients.  Loan Depot management required this from Plaintiff so that he
17 could handle the loans for Spanish-speaking customers who otherwise would not be able to
18 conduct business with a Loan Depot loan officer without Plaintiff's participation.

19        Plaintiff was required to complete loan applications within thirty minutes of
20 receiving contact from a customer, including many Spanish language customers in states
21 throughout the country.  As a result of this strict requirement, Plaintiff was required to spend
22 significant hours working on call.  During this time, he was not able to perform personal
23 tasks and instead had to remain at his computer so that he could access the Loan Depot
24 computer system as soon as a customer contacted him to complete a loan application.  As a
25 result of all his assignments, Plaintiff routinely worked with knowledge of management in
26 excess of forty hours per week during his tenure at Loan Depot, but Plaintiff was not paid
27 overtime for all of the hours he worked.  During the typical week of his employment with
28

1  Loan Depot, Plaintiff worked eighty-four hours. However, Plaintiff was not paid overtime
2  for all the hours he was required by management to work with Loan Depot's knowledge.
3       On June 23, 2018 and again on June 26, 2018, Plaintiff emailed Loan Depot's human
4  resources department notifying them that he was not being paid for all the overtime he
5  worked. He specifically notified human resources that he was not being paid for all the
6  hours he was required to work and be on call to service Spanish-language customers.
7  Human resources responded that they would pay Plaintiff any back wages he was owed, but
8  Plaintiff was not compensated for all of the hours he worked by Loan Depot. Loan Depot
9  wrongfully withheld wages from Plaintiff by failing to pay wages due to Plaintiff for hours
10 Plaintiff worked, including overtime.
11      Following Plaintiff's complaints to human resources and management about having
12 not received legally required overtime and wages due under the FLSA and Arizona law and
13 being instructed to conduct loan officer work in violation of Arizona statute and public
14 policy, and as a direct and proximate result of Plaintiff's complaints, Loan Depot retaliated
15 by terminating Plaintiff's employment on June 27, 2018.

16          **B.     Defendant's statement of the case.**

17      loanDepot is a national lending company that matches borrowers with the credit they
18 need through technology and high-touch customer care. AVH is an Arizona mortgage
19 company based in Scottsdale, Arizona. AVH and loanDepot are parties to a joint venture.
20 AVH hired Plaintiff in the position of Loan Consultant on March 5, 2018. Plaintiff was paid
21 $12.00 per hour plus commissions based on a written Compensation Plan. Plaintiff was
22 required to track his hours worked. AVH paid Plaintiff for all hours he reported working,
23 including time-and-a-half for any overtime worked.
24      In June 2018, Plaintiff began complaining that he was being asked to do work in
25 states where he was not licensed as a loan officer. AVH immediately investigated Plaintiff's
26 complaints and took appropriate actions to ensure that Plaintiff and other loan officers were
27 not working as loan officers in states where they were not licensed. AVH took no adverse
28

1 action against Plaintiff for his complaints, but rather worked to ensure that his complaints
2 were properly addressed.

3       During his three months of employment with AVH, Plaintiff performed his job
4 poorly and was frequently aggressive and combative with customers and coworkers.
5 Plaintiff became easily agitated when simple requests were made, such as a request that he
6 move to another desk or a request to meet with his supervisor to discuss a customer
7 complaint. Plaintiff also failed to attend required work meetings and missed meetings with
8 borrowers without notice. Borrowers complained that Plaintiff was difficult to contact and
9 would not call them back. As a result of Plaintiff's poor job performance during the very
10 short time he was employed, AVH decided to terminate Plaintiff's employment on June 22,
11 2018.

12       Prior to AVH's decision to terminate Plaintiff's employment, Plaintiff did not
13 complain that he had not been paid for overtime hours. After AVH decided to terminate
14 Plaintiff's employment, Plaintiff complained that he had been required to work "on call"
15 hours for which he had not been compensated. AVH requested documentation reflecting the
16 hours that Plaintiff had worked, but failed to track. Plaintiff refused to provide any
17 documentation reflecting the hours he allegedly worked or any specifics as to the actual
18 hours he claimed to have worked.

19       **3.**      **Description of the principal factual and legal disputes.**

20       Whether Plaintiff was paid proper overtime and all wages due pursuant to the Fair
21 Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA") and timely paid all wages due
22 pursuant to the Arizona Wage Statute, A.R.S. § 23-350 et seq.

23       Whether Defendants willfully violated overtime provisions of the FLSA, 29 U.S.C.
24 § 207; violated the record keeping requirements of the FLSA; and willfully violated the
25 Arizona Wage Statute by failing to timely pay all wages due to Plaintiff.

26       Whether Defendants violated the FLSA, 29 U.S.C. § 215(a)(3) by retaliating against
27 Plaintiff as a result of Plaintiff raising complaints about unpaid overtime.

28

Whether Defendants violated the laws of this State by wrongfully terminating Plaintiff in violation of A.R.S. § 23-1501 as a result of Plaintiff raising complaints about being required to violate the laws and public policy of this State.

Whether Defendants had a legitimate, non-retaliatory reason for terminating Plaintiff's employment.

Whether Plaintiff can prove that Defendants' legitimate, non-retaliatory reason for terminating his employment is a pretext for retaliation.

Whether loanDepot was Plaintiff's employer.

**4.     The jurisdictional basis for the case, citing specific jurisdictional statutes.**

This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 201 et seq. and 28 U.S.C. § 1331.  Plaintiff's State law claims are sufficiently related to the FLSA claims that they form part of the same case or controversy.  This Court therefore has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

**5.     Any parties which have not been served and an explanation of why they have not been served; and any parties which have been served but have not answered or otherwise appeared.**

All parties have been served and filed answers.

**6.     A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings.**

At present the parties do not expect to add additional parties to the case.

**7.     A listing of contemplated motions and a statement of the issues to be decided by these motions.**

 The parties anticipate potential motions for summary judgment depending on what evidence is obtained during discovery.

**8.     The status of related cases pending before other courts or other judges of this Court.**

None.

**9.  A discussion of the parties' compliance to date with the MIDP, whether any issues have arisen under the MIDP, and, if issues have arisen, a description of those issues so the Court may resolve them at the Rule 16 conference. If the Rule 26(f) joint report raises MIDP issues for the Court to resolve, copies of the parties' MIDP disclosures should be attached to the report.**

The parties have exchanged initial MIDP responses.

**10.  A discussion of necessary discovery, including:**

   **A.  The extent, nature and location of discovery anticipated by the parties.**

The parties anticipate discovery in the form of interrogatories, requests for production of documents, requests for admissions, and depositions as contemplated by the Federal Rules of Civil Procedure.

   **B.  Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure.**

None at this time.

   **C.  The number of hours permitted for each deposition, unless extended by agreement of the parties.**

The parties anticipate following the Federal Rules of Civil Procedure.

**11.  A discussion of issues relating to preservation, disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

 The parties have met and conferred regarding document retention obligations and electronically stored information ("ESI") and do not presently anticipate any issues.  The parties agree that electronically stored information be produced either in native format or in searchable .tiff format with corresponding text files, with appropriate Concordance load files.

**12.  A discussion of any issues relating to claims of privilege or work product.**

The parties are not aware of any specific issues that need to be addressed at this time and intend to follow the applicable rules.

**13.  Proposed specific dates for each of the following:**

    **A.  A deadline for the completion of fact discovery and final supplementation of discovery responses under MIDP:**

    August 16, 2019

    **B.  Dates for full and complete expert disclosures under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.**

    Plaintiff:  March 15, 2019

    Defendant:  April 12, 2019

    Simultaneous rebuttal:  May 10, 2019

    **C.  A deadline for completion of all expert depositions.**

    June 21, 2019

    **D.  A deadline for filing dispositive motions.**

    September 20, 2019

    **E.  A date by which the parties shall have engaged in good faith settlement talks.**

    June 14, 2019

    **F.  Case Specific Deadlines**

    n/a

**14.  Whether a jury trial has been requested and whether the request for a jury trial is contested.**

Plaintiff has demanded a jury trial.

**15.  Estimated length and any suggestions for shortening the trial.**

The estimated length of trial is three days.

**16.  The prospects for settlement, including any request of the Court for assistance in settlement efforts.**

The parties anticipate discussing settlement but do not request the Court's assistance at this time.  Defendants believe that referral to a settlement conference judge would facilitate settlement.

**17.** **Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure.**

None.

DATED: November 7, 2018.

        BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

        /s/ Ty D. Frankel
        Ty D. Frankel
        2325 E. Camelback Road, Suite 300
        Phoenix, Arizona 85016

        BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
        Patricia N. Syverson
        600 W. Broadway, Suite 900
        San Diego, California 92101
        Attorneys for Plaintiff

        OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

        /s/ Douglas (Trey) Lynn (w/permission)
        Tracy A. Miller
        Douglas (Trey) Lynn
        Esplanade Center III
        2415 E. Camelback Road, Suite 800
        Phoenix, AZ 85016
        Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I, Karen Vanderbilt, hereby certify that a true copy of the foregoing document filed through the ECF system will be electronically sent to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on November 7, 2018.

/s/Karen Vanderbilt